IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMMETT J. LYNCH and<br>TARA LYNCH,<br><br>          Plaintiffs,<br><br>v.<br><br>SAMMY YOUNG, individually as employee<br>of the Cook County Sheriff Department;<br>ERIC KELLOGG individually and as Mayor<br>of Harvey Illinois; THE CITY OF HARVEY<br>ILLINOIS, as principal and employer of Six<br>unnamed Harvey Police Officers;<br><br>          Defendants. | No.   04 C 5136<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Emmett J. Lynch and Tara Lynch filed a four-count second amended complaint, alleging violations of 42 U.S.C. § 1985(3) and a state law claim for intentional infliction of emotional distress ("IIED") against all defendants[1], and slander per se against defendant Sammy[2] Young ("Young"). Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Young and Eric Kellogg ("Kellogg") have filed a motion to dismiss the three remaining counts of plaintiffs' complaint. Plaintiffs filed a response, but defendants have failed to file a reply in support of their motion.[3] For the reasons explained below, defendants' motion to dismiss is denied.

---

[1] On February 9, 2005, the court granted defendant Michael F. Sheahan's motion to dismiss plaintiffs' second amended complaint against him. Count I stated a claim against Sheahan only and has therefore been dismissed.

[2] Defendants state that Young's first name is "Sammie."

[3] Defendants' motion to dismiss is single-spaced, in violation of Local Rule 5.2(a).

# FACTS

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Plaintiffs Tara Lynch ("Tara") and Emmett Lynch ("Emmett") are married and live in Country Club Hills, Illinois. Defendant Young is a former employee of the City of Harvey, Illinois and is currently a Cook County sheriff's deputy. Defendant Kellogg is the mayor of Harvey.

In May 2002, defendant Young and his wife bought the house next-door to plaintiffs. A few months later, Young accused the plaintiffs' six-year old son of insulting the Youngs' six-year old child, and ill-will grew between the neighbors. Over the next two years, the Youngs lodged a series of noise and trespass complaints against plaintiffs and their dog, causing Country Club Hills police officers and an Illinois State trooper to visit plaintiffs on several occasions. According to plaintiffs, Young conspired with Harvey police officers, Cook County sheriff's deputies, Kellogg, and other law enforcement and municipal officials to subject plaintiffs to a pattern of harassment, intimidation, and violations of their constitutional rights.

Plaintiffs allege that in May 2004, Kellogg traveled to plaintiffs' neighborhood accompanied by six Harvey police officers wearing police vests and badges, and driving four unmarked police cars. Kellogg went to plaintiffs' home and made the following statements: (1) "Sammy is my guy and we go way back"; (2) "Sammy told me about the previous incidents"; (3) "Both of you live in a nice area"; (4) "Don't invite hood people to your home"; and (5) "You should not invite people from your old neighborhood out here." Kellogg then instructed the

Harvey police officers to record the license plate numbers of plaintiffs' vehicles. Plaintiffs assert that they understood Kellogg to be placing certain restrictions on their right to associate with others and felt "intimidated and in apprehension of fear for their safety and the safety of their family and guests."

On July 3, 2004, plaintiffs were hosting a birthday party and the Youngs also had guests at their home. Pursuant to a request from the Youngs, the Country Club Hills police issued a parking ticket to one of plaintiffs' guests for "blocking the driveway." After the officer wrote the parking ticket, Young came out of his house and said, "I told your friends not to come out disrespecting me." Later that evening, two Harvey police vehicles, occupied by four Harvey police officers, parked next to plaintiffs' house, displayed their weapons and badges, and "stared" at plaintiffs for over an hour. Plaintiffs allege that they "felt intimidated and in apprehension of fear for their safety and the safety of their children, family and guests." Also that evening, the Country Club Hills police issued four more parking tickets to plaintiffs' guests. One of the officers informed plaintiffs that the tickets were issued at the request from a guest at the Youngs' house, Robert Battie ("Battie"), an alderman for the Fifth Ward in Country Club Hills. On July 4, 2004, guests of the Youngs, including Battie, parked in the same place where plaintiffs' guests had been issued parking tickets the day before, and the Country Club Hills police arrived again. Battie came out of the Youngs' house, spoke to the officers, and no parking tickets were issued.

On July 19, 2004, plaintiff Emmett Lynch was "unlawfully stopped without probable cause or reasonable suspicion" by three Cook County sheriff's deputies driving two sheriff's vehicles. One sheriff's deputy said to Emmett, "you got a warrant on you," and that the officers knew Emmett was driving because they ran his license plate number. The license plate was not

registered in Emmett's name. Emmett was interrogated about illegal drugs, arrested and handcuffed, and his vehicle was searched by officers and police dogs. The sheriff's deputies made several comments to Williams Pruitt ("Pruitt"), the passenger in Emmett's car, including: (1) "Tell your boy to watch himself - somebody don't like him"; (2) "We are going to get him"; (3) "We'll give you two to three thousand dollars to set someone up like that for a kilo of cocaine"; (4) "I can't see Emmett and his wife affording a house like that whey they are on Section 8"; and (5) "He's going to fall sooner or later and he'll make another mistake and I'll catch him." One sheriff's deputy also made several comments to Emmett, including warning him not to leave his windows down or his doors unlocked, and asking him about a "secret compartment" for drugs.

On July 20, 2004, a Cook County sheriff's vehicle pulled in front of plaintiffs' home and remained for more than an hour, causing plaintiffs to "reasonably be in apprehension of their safety and the safety of their children." Plaintiffs called the Country Club Hills police to report the vehicle outside their home.

Plaintiffs allege that throughout the conspiracy, Young has spread untrue rumors that have lowered plaintiffs' esteem in the community. Young has stated to "several persons" that plaintiff "don't know who he's dealing with," he "ran [plaintiff's] plates," he has "had people set-up before," and he knows "a couple of people that owe me a murder or two." Young also stated to third parties, "don't let your children visit the Lynch family," and "Emmett Lynch is a drug dealer and his wife is a nurse who probably supplies him with the drugs."

4

## DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003).

### I.   42 U.S.C Section 1985(3) (Count II)

In Count II of their complaint, plaintiffs allege that defendants "conspired to deprive plaintiffs directly of the equal enforcement of parking laws, equal protection of the laws, and equal privileges and immunities under the law" in violation of 42 U.S.C. § 1985(3). Plaintiffs argue that Kellogg's threats, the illegal stop, search and arrest of Emmett Lynch, comments and threats made to plaintiffs and other persons by Cook County sheriff's deputies, multiple parking tickets issued to plaintiffs' guests, and other incidents of harassment were all in furtherance of the conspiracy.

Although defendants cite the standard for a motion to dismiss, they consistently misconstrue the instant motion as a motion for summary judgment. For example, defendants argue that "the facts do not establish that Young was acting under the color state law" and "failed to establish the existence of a conspiracy or understanding between Young, a state official, and Kellogg, a private person, to violate plaintiffs [sic] constitutional rights." It is axiomatic that a plaintiff is not required to "establish" any facts to survive a motion to dismiss; indeed, a plaintiff is not even required to plead sufficient facts to establish the legal elements of his claim. See

Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794, 801 (7th Cir. 2000). Rather, federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999).

Defendants also attempt to support their motion to dismiss with additional facts that are outside the complaint. This, too, violates a bedrock principle of federal procedure. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court's inquiry is generally limited to the factual allegations contained within the four corners of the complaint. Hill v. Trustees of Ind. Univ., 537 F.2d 248, 251 (7th Cir. 1976); see also Carter v. Stanton, 405 U.S. 669, 671 (1972)(holding that consideration of matters outside the four corners of the complaint without converting the motion to a Rule 56 motion for summary judgment may be result in reversible error). Defendants repeatedly disregard this fundamental maxim. For example, defendants argue that the sheriff's deputies had probable cause to search Emmett Lynch's vehicle on July 19, 2004, and to arrest him. Whether the factual allegations of plaintiffs' complaint, including that Emmett Lynch was subject to an unconstitutional search and arrest, are true is not a matter to be resolved on a motion to dismiss.

Although less than artful, plaintiffs' complaint satisfies the minimum requirements of notice pleading because it alleges a civil conspiracy by defendants to abuse their law enforcement and municipal powers to deprive plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3). Accordingly, defendants's motion to dismiss Count II is denied.

## II. IIED (Count III)

Count III of plaintiffs' second amended complaint alleges that defendants' conduct described above constituted IIED. Defendants assert that Count III should be dismissed for failure to state a claim because the conduct alleged is not "extreme and outrageous," that plaintiffs have "failed to establish" the conduct in fact caused emotional distress, and that "there is no finding" that defendants intended to inflict emotional distress. Defendants again confuse their motion to dismiss for a motion on the merits of plaintiffs' suit; no facts need be "established" or "found" at this stage.

Illinois law requires plaintiff to allege the following elements of an IIED claim: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause such distress; and (3) the defendants' conduct did, in fact, cause severe emotional distress." Treece v. Village of Naperville, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995) (citing Doe v. Calumet City, 641 N.E.2d 498, 506 (Ill. 1994)). Plaintiffs have done this. Defendants argue that the alleged conduct is not "extreme and outrageous." Defendants are correct that "there is no liability for [IIED] for mere insults, indignities, threats, annoyances, petty oppressions or trivialities." McGrath v. Fahey, 126 Ill.2d 78, 86 (1988).[4] Citing to this standard, however, only highlights the marked difference between the "trivialities" that do not state an IIED and the misconduct alleged in the instant case.

---

[4] The court notes that defendants provide an incorrect citation for Ruppel v. Ramseyer, 33 F. Supp. 2d 720 (C.D. Ill. 1999), the principal case they offer in support of their argument to dismiss plaintiffs' IIED claim. Ruppel is a district court case published in 1999, not a 1997 Seventh Circuit opinion as misstated by defendants.

7

Plaintiffs here allege a series of abuses of official power, threats, and slander by law enforcement officers and city officials, all orchestrated in an attempt to harass, intimidate, and frighten plaintiffs, their families, and their friends. As both parties note, "Conduct is 'extreme and outrageous' only when reciting facts to an average community member would arose that person's resentment against the actor, and lead that person to exclaim 'Outrageous!'" Doe v. Calumet City, 641 N.E.2d 498, 506 (1994). The court finds that the average community member would be profoundly troubled by plaintiffs' allegations, and that they are sufficiently "extreme and outrageous." Because plaintiffs have satisfied the minimum requirements of notice pleading, defendants' motion to dismiss is denied as to Count III.

## III. Slander per se (Count IV)

In Count IV of their complaint, plaintiffs allege that Young committed slander per se by publishing to third parties that plaintiffs were drug dealers and suppliers. Under Illinois law, a statement that imputes the commission of a criminal offense is defamatory per se. Van Horne v. Muller, 185 Ill.2d 299, 308 (1998). Defendants argue that Count IV should be dismissed because plaintiffs do not sufficiently allege that the statement was published to third parties and because the statement was substantially true. Although plaintiffs' cursory, one-paragraph response to defendants' motion to dismiss Count IV cites no authority and is otherwise unconvincing, the court finds that plaintiffs have sufficiently stated a claim for slander per se.

The fact that plaintiffs did not allege the names of the "several persons" to whom Young allegedly made the statement does not warrant dismissal of their defamation claim. See Chisholm v. Foothill Capital Corp., 940 F. Supp. 1273, 1284-85 (N.D. Ill. 1996)(failure to specify to whom the defamatory comments were made does not justify dismissal of a defamation

8

claim). Plaintiffs in the instant case have alleged the basic substance of the statements and that they were made by Young, and provide defendants with sufficient information to respond. The details of the slander claim may be discerned through discovery. Id. at 1284.

The defense of truth to a defamation claim requires that the defendant demonstrate that the allegedly defamatory statement is substantially true. See Harrison v. Chicago Sun-Times, Inc., 341 Ill. App. 3d 555, 563 (1st Dist. 2003). A motion to dismiss on grounds of truth may be proper, for example, if the plaintiff more or less concedes the essential truth of the alleged defamatory statement, or if there is no basis for a reasonable jury to find that the allegedly defamatory statement was not substantially true even as framed in the plaintiff's own allegations. See Clark v. Maurer, 824 F.2d 565, 566 (7th Cir. 1987); Myers v. Phillips Chevrolet, Inc., 2004 WL 2403126, at *5 (N.D. Ill. Oct. 26, 2004). Neither of these grounds applies to the instant case because nothing in plaintiffs' second amended complaint concedes or even suggests the truth of the alleged defamatory statements. Defendants attempt to prove the substantial truth of the alleged statements by attaching a record of Emmett Lynch's 1997 drug conviction in federal court in Alabama. Again, matters outside the pleadings may not be considered on a motion to dismiss, Hill, 537 F.2d at 251, and the court does not consider the conviction.

Accordingly, defendants' motion to dismiss Count IV is denied.

## CONCLUSION

As explained above, defendants' motion to dismiss is denied as to Count II (42 U.S.C. § 1985(3) - civil conspiracy), Count III (IIED); and Count IV (slander per se). Count I was previously dismissed by this court on February 9, 2005. Defendants are ordered to file their answer to Counts II, III, and IV on or before March 30, 2005. The March 16, 2005, status conference is vacated and continued to April 6, 2005, at 9:00 a.m., at which time the parties are directed to have conferred and to present a joint, definitive discovery plan.

**ENTER:** March 9, 2005

_____
Robert W. Gettleman
United States District Judge