# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EMMETT J. LYNCH and <br> TARA LYNCH, <br><br> Plaintiffs, <br><br> v. <br><br> SAMMY YOUNG, individually and in his official capacity as Superintendent of the Cook County Sheriff's Department of Correction; ERIC KELLOGG individually and in his official capacity as Mayor of Harvey, Illinois; THE CITY OF HARVEY, ILLINOIS; KEVIN ENYAR, individually and in his official capacity as a Cook County Sheriff's Police Officer; and LONNIE SMALL, individually and in his official capacity as Sergeant of the Cook County Sheriff's Police, <br><br> Defendants. | No. 04 C 5136 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Emmett J. Lynch and Tara Lynch filed a twelve-count fourth amended complaint, asserting claims under 42 U.S.C. § 1983 for violations of their rights under the Fourth and Fifth Amendments to the U.S. Constitution, and state law claims for intentional infliction of emotional distress ("IIED") and slander. Plaintiffs seek compensatory and punitive damages. Defendant Eric Kellogg ("Kellogg") has filed a motion to dismiss Count IV (§ 1983 - Fifth Amendment) and Count VIII (IIED) pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Sammy Young ("Young") has joined in Kellogg's motion. Defendants Kevin Enyar ("Enyar") and Lonnie Small ("Small") have filed a motion to dismiss plaintiffs' fourth amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant City of Harvey ("Harvey") has filed a motion to

dismiss Count V and Count IX. For the reasons stated below, defendants' motions are granted in part and denied in part.

## FACTS

Plaintiffs Tara Lynch ("Tara") and Emmett Lynch ("Emmett") are married and live in Country Club Hills, Illinois. Defendant Young is a former employee of Harvey and is currently a Superintendent of the Cook County Sheriff's Department of Corrections. Defendant Kellogg is the mayor of Harvey. Defendant Small is a sergeant with the Cook County Sheriff's Police. Defendant Enyar is a Cook County Sheriff's Police officer.

The facts of this case are more fully summarized in this court's previous opinion denying Young and Kellogg's motion to dismiss the second amended complaint. Lynch v. Young, 2005 WL 946881 (N.D.Ill. Mar. 9, 2005). In general, plaintiffs had a dispute with Young and his wife, who are plaintiffs' next-door neighbors in Country Club Hills, Illinois. According to plaintiffs, over the next two years Young conspired with Harvey police officers, Cook County Sheriff's deputies, Kellogg, and other law enforcement and municipal officials to subject plaintiffs to a pattern of harassment, intimidation, and violations of their constitutional rights, including their right to "peaceful enjoyment of their property rights." Plaintiffs also allege that Young made disparaging comments about them to community members, including that "Emmett Lynch is a drug dealer," and "I've had people set up before." Young contacted the Cook County Sheriff's Department and alleged that plaintiffs were selling drugs, operating a gambling operation from their home, and were members of the Traveling Vice Lords.

According to plaintiffs, Harvey police officers, including Enyar and Small, parked police vehicles outside their home and recorded the license plate numbers of plaintiffs' cars based on

2

Young's false statements. Plaintiffs allege that Young "caused decision makers with the Cook County Sheriff's Police to adopt an official policy and practice of investigating plaintiffs through direct surveillance which interfered with plaintiffs' peaceful enjoyment of their property and which caused [sic]."  Plaintiffs allege that they "felt intimidated, hostage on their own property, in apprehension of fear for their safety and the safety of their children, family and guests without just compensation." Plaintiffs assert that it is "unlikely" that the conduct described in their complaint "occurred absent an agreement between defendants."

In Count III, plaintiffs allege that on July 19, 2004, several Cook County Sheriff's officers set up surveillance of plaintiffs' property with "the intention to use [Emmett's] alleged seat belt violation to illegally stopped as he drove from his property and to search his vehicle and to search his vehicle for illegal contraband."[2] Moments after leaving his driveway in a white Escalade, Emmett was "unreasonably stopped" by officers, including Enyar. Plaintiffs allege that Enyar, a personal friend of Young, was advised that Emmett was driving a white Escalade and that the stop was pre-planned and pretextual. Enyar stated to Emmett, "You got a warrant on you," and that the officers knew Emmett was driving because they ran his license plate number. The license plate was not registered in Emmett's name. Emmett was interrogated about illegal drugs, arrested and handcuffed, and his vehicle was searched three times by officers and police dogs. Enyar made several comments to Williams Pruitt ("Pruitt"), the passenger in Emmett's car, threatening Emmett. Enyar also made several comments to Emmett, including warning him

---

[1] The court notes that plaintiffs' fourth amended complaint contains several incomplete sentences.

[2] Plaintiffs refer to a vehicle stop in Count I, but do not provide any details about the stop. It appears that it is a reference to the July 14, 2004, stop described in Count III.

3

not to leave his windows down or his doors unlocked, and asking him about a "secret compartment" for drugs. No illegal drugs or other contraband were found.

## DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003).

The court notes that plaintiffs' fourth amended complaint, prepared by David E. Neely, the same counsel who filed the original complaint over a year ago, is well below the standards of an experienced member of the federal trial bar. Indeed, portions are inferior to the second amended complaint, which this court generously described as "less than artful." Lynch, 2005 WL 946881, at *3. Numerous incomplete sentences, major typographical errors, mis-matched headings, sloppy formatting, mis-numbered paragraphs, and other serious defects make it difficult for the court to decipher the precise nature of plaintiffs' allegations and against which defendant they are directed. These deficiencies are particularly disappointing given the number of opportunities and the extensive amount of time plaintiffs had to prepare their pleadings.

The considerable flaws in plaintiffs' pleadings are further compounded by the improper form and woefully incomplete substance of their briefs in response to defendants' motions to dismiss. Plaintiffs respond to each paragraph of defendants' motions, including substantive arguments, by admitting or denying the "allegation," often without further explanation, and thus

4

fail to address major issues raised by defendants. In addition, plaintiffs respond to significant case law citations by stating conclusorily that "the above cited case law is immaterial" or that plaintiffs "neither admit nor deny" defendants' recitation of the required elements of plaintiffs' claims. The court cannot comprehend how counsel could fail to recognize the difference between allegations and arguments, or could believe that his briefs were acceptable responses to motions to dismiss and valid case law citations. Finally, plaintiffs' response to Kellogg's motion to dismiss is 21 pages long and does not contain a table of contents, in violation of Local Rule 7.1. Although the court declines to exercise its authority to strike plaintiffs' response, the myriad inadequacies of plaintiffs' briefs significantly diminish their effectiveness.

## I. Section 1983 - Fifth Amendment

Counts II, IV, V, and VI assert § 1983 claims against Young, Kellogg, Harvey, and Small, respectively, alleging that defendants conspired to violate plaintiffs' rights under the Takings Clause of the Fifth Amendment. According to plaintiffs, defendants interfered with their "peaceful enjoyment of their property" by recording the license plates of cars parked at their house, issuing parking tickets to their guests, surveilling their house with uniformed officers, and stopping and searching Emmett's vehicle. Plaintiffs fail, however, to explain coherently how any of this alleged conduct violates the Takings Clause or to cite any case law applying the Takings Clause to allegations analogous to those in the fourth amended complaint.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use without just compensation." Lingle v. Chevron U.S.A., Inc., 125 S.Ct. 2074, 2080 (2005). The "paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property," but the Supreme Court has also

5

recognized that government regulation of private property may "be so onerous that its effect is tantamount to a direct appropriate or ouster." Id. at 2081. In that instant case, plaintiffs fail to allege either an actual government seizure of their home or a regulatory taking.

Plaintiffs cite two cases in support of their Takings Clause argument, but both cases are readily factually distinguishable and in fact only highlight the vast gap between viable Fifth Amendment claims and plaintiffs' claims here. In R.J. Widen Co. v. United States, 357 F.2d 988 (Ct. Cl. 1966), the U.S. Army entered the plaintiff's property and destroyed a dam and diverted water from his business. Id. at 990-992. The court held that the plaintiff was entitled to compensation for his water rights, but was not entitled to compensation for damages to his personal property or business because those were incidental to the taking. Id. at 992. Pete v. United States, 531 F.2d 1018 (Ct. Cl. 1976), is equally unhelpful to plaintiffs. In Pete, the U.S. Secretary of Agriculture banned floating living quarters within a wilderness area where the plaintiffs lived and owned houseboats. The court held that the houseboats were fixtures on the plaintiffs' properties and had been rendered totally useless and valueless by the regulations, and that the plaintiffs were therefore entitled to compensation under the Fifth Amendment. Id. at 1035-36.

Plaintiffs' allegations in the instant case are a far cry from the takings in Pete and R.J.Widen, which involved the complete destruction of a plaintiff's property or a regulation that eviscerated its value. In contrast, plaintiffs fail to allege that the value of their property was completely or even mostly destroyed, or that their property was the subject of an onerous governmental regulation. Plaintiffs' attempt to shoehorn the facts of their case, which alleges harassment and intimidation by government officials, into a Fifth Amendment violation is not

supported by any case law applying the Takings Clause to similar cases, and is utterly unpersuasive. Accordingly, the court grants defendants' motions to dismiss Counts II, IV, V, and VI.

## II. Section 1983 - Fourth Amendment

Enyar argues that the court should dismiss Count III, which asserts that Enyar violated Emmett's Fourth Amendment rights when he stopped and searched Emmett's vehicle on July 19, 2004.[3] Plaintiffs allege that the stop and search of Emmett's vehicle, which included the use of police dogs, was part of the "take down" policy or practice intended to unreasonably interrogate Emmett, and that it was a pretext to violate his Fourth Amendment rights.[4]

Enyar argues that there can be no Fourth Amendment claim absent interference with a legitimate privacy interest, that the use of a well-trained narcotics-detection dog during a lawful traffic stop generally does not implicate such an interest, and that Emmett was stopped because of an outstanding warrant. Although Enyar is correct that a violation of a legitimate privacy interest is a required element of a Fourth Amendment claim, Enyar's attack on Count III, like the nearly identical argument made by Young and Kellogg in their motion to dismiss the second

---

[3] The court notes that Count I asserts a Fourth Amendment claim against Young, alleging that Young "used defendant's alleged seat belt violation as a pretext to set up surveillance [of] plaintiffs' home and to search plaintiffs' vehicle for illegal narcotic." Young, however, joined in Kellogg's motion to dismiss only, and did not file his own motion to dismiss challenging Count I, which is not brought against Kellogg and thus not challenged in his motion. As a result, there is no motion to dismiss Count I currently before the court.

[4] The court notes that although certain language in the fourth amended complaint suggests that plaintiffs allege a conspiracy to violate plaintiffs' equal protection rights, unlike plaintiffs' second amended complaint, the fourth amended complaint does not assert a civil conspiracy claim under 42 U.S.C. § 1985(3). In addition, plaintiffs fail to allege invidious discrimination based on race or class, as required to state a § 1985(3) claim. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Indeed, plaintiffs make no reference to the race or class of any party.

amended complaint and explicitly rejected by this court, disregards a fundamental maxim: a court's inquiry on a motion to dismiss is limited to the four corners of the complaint. Lynch, 2005 WL 946881, at *3. As this court previously noted, "Whether the factual allegations of plaintiffs' complaint, including that Emmett Lynch was subject to an unconstitutional search and arrest, are true is not a matter to be resolved on a motion to dismiss." Id. In the fourth amended complaint plaintiffs again allege that Emmett's vehicle was stopped and searched without probable cause or a valid warrant, arguing that the seat belt warrant was a mere pretext to violate his constitutional rights. Whether the use of a police dog is constitutional during a valid stop or whether the warrant was valid is therefore irrelevant at this stage in the litigation because plaintiffs allege that the stop was unconstitutional.

Enyar also argues, without supporting authority, that plaintiffs fail to state a Fourth Amendment claim because no contraband was found in Emmett's car and thus "plaintiff has failed to alleged an injury as a result of said search." It is axiomatic that a Fourth Amendment claim does not require that law enforcement find or seize any contraband because the invasion of a legitimate privacy right is the constitutional injury. See, e.g., Groh v. Ramirez, 540 U.S. 551, 563 (2004) (finding Fourth Amendment violation when search of house pursuant to invalid warrant discovered no contraband); Siebert v. Severino, 256 F.3d 648, 655 (7th Cir. 2001) ("The law recognizes that law-abiding citizens can sue and recover general damages for a Fourth Amendment violation, even without proof of damages."). In the instant case, plaintiffs allege that the search of Emmett's vehicle violated his constitutional right to privacy. As the Seventh Circuit noted in Sibert, it is of no significance that nothing was discovered and Emmett was not

charged with a crime because Emmett was harmed by the alleged constitutional violation itself. Id.

Accordingly, the court denies Enyar's motion to dismiss Count III.

## III. IIED (Counts VII-XI)

Counts VII through XI of plaintiffs' fourth amended complaint assert IIED claims against Young[5], Kellogg, Harvey, Enyar, and Small, respectively. Enyar, Small, Young, and Kellogg argue that the conduct alleged is not extreme and outrageous, as required to state an IIED claim under Illinois law. Defendants are plowing old ground and wasting the court's time with this argument, which disregards bedrock principles of federal notice pleading discussed at length in this court's earlier opinion. This court previously held that plaintiffs had stated an IIED claim, rejecting defendants' argument that the alleged conduct was not severe enough because "the average community member would be profoundly troubled by plaintiffs' allegations, and that they are sufficiently 'extreme and outrageous.'" Lynch, 2005 WL 946881, at *4. The IIED allegations in the fourth amended complaint are substantially similar to those in the second amended complaint, and they are sufficiently severe for the reasons expressed in this court's earlier opinion. Id.

Enyar and Small also argue that plaintiffs "cannot demonstrate that either of the defendants knew that severe emotional distress would certainly or substantially arise." Under Illinois law, a defendant must intend to inflict severe emotional distress or know that there is a high probability that the conduct would cause such distress. Treece v. Village of Naperville, 903

---

[5]Count VII is titled an IIED claim against Young, but the paragraphs of that count do not relate to IIED and seek relief against Kellogg, not Young.

9

F. Supp. 1251, 1259 (N.D.Ill. 1995). In the instant case, plaintiffs allege that defendants "intended to inflict severe emotional distress or knew there was a high probability that their conduct singularly and collectively would cause distress." Under the liberal requirements of federal notice pleading, as this court's earlier opinion clearly stated, a plaintiff is not required to "demonstrate" any facts to survive a motion to dismiss. See Lynch, 2005 WL 946881, at *3. Plaintiffs' allegations of intent or knowledge by defendants are therefore sufficient to survive a motion to dismiss. Kellogg and Young's argument that plaintiffs' "conclusory statement that they, in fact, suffered severe emotional distress is insufficient to support their claim," fails for the same reason: allegations of the required elements of a claim are sufficient to survive a motion to dismiss.[6]

Defendants ask the court to decline to exercise supplemental jurisdiction over the IED claims if the federal claims are dismissed. It is within a court's sound discretion to decline or elect to exercise supplemental jurisdiction over supplemental state law claims. See Wright v. Associated Ins. Cos., Inc., 29 F.3d 1244, 1252 (7th Cir. 1994) (exception to "general rule" that supplemental state law claims are dismissed after federal claims have been eliminated when substantial judicial resources have been expended); see also Rothman v. Emory Univ., 123 F.3d 446, 454 (7th Cir. 1997) (noting that courts are not required to relinquish supplemental jurisdiction).

Federal claims remain against Young and Enyar, and thus the court retains supplemental jurisdiction over the IED claims against them. In addition, the federal claims are intertwined

---

[6] The court notes that plaintiffs incorrectly state in their response to Harvey's motion to dismiss that medical records were attached to the fourth amended complaint.

10

with the state law claims that remain against Harvey, Kellogg, and Small, substantial judicial resources have already been devoted to these claims, and defendants fail to offer any cogent reasons for the court not to adjudicate the claims before it. See Equity Residential v. Kendall Risk Management, Inc., 2005 WL 2007240, at * 7 (N.D. Ill. Aug. 11, 2005) (retaining supplemental jurisdiction over state law claims against defendant when federal claims remained against other defendants).

Accordingly, the court denies defendants' motions to dismiss Counts VII through XI.

Harvey is the only defendant that addresses plaintiffs' request for punitive damages for their IED claims, arguing that it is immune from punitive damages because it is a local public entity as defined in 745 ILCS 10/1-106 under the Illinois Tort Immunity Act, 745 ILCS 10/2-102. Plaintiffs fail to respond meaningfully to Harvey's correct recitation of the relevant statutes and case law. Instead, plaintiffs state only that they "neither admit not den[y] the allegations," and "moves[sic] for a more definite statement." This response is wholly inadequate and nonsensical for several reasons, including that arguments are not allegations and a non-movant cannot move for a more definite statement in support of a motion. More importantly, Harvey is correct that it is not subject to punitive damages. In fact, under Illinois common law, punitive damages are not available in an action for intentional infliction of emotional distress because outrageous conduct is an element of the action. Littlefield v. McGuffey, 954 F.2d 1337, 1345 n.3 (7th Cir. 1992), citing Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157, 165 (1961). Accordingly, the court strikes plaintiffs' requests for punitive damages on the IED claims, Counts VII through XI.

11

IV.     **Official capacity claims against Kellogg**

Kellogg argues that the official capacity claims against him should be dismissed because they are redundant of the claims against Harvey. A suit against a public official in his official capacity is really a suit against the municipality. See Jungels v. Pierce, 825 F.2d 1127, 1129 (7th Cir. 1987) (claim brought against a mayor in his official capacity and against the city were brought against "one defendant...not two," and "nothing was added by suing the mayor in his official capacity."); Borromeo v. City of Chicago, 2004 WL 2966925, at *3 (N.D.Ill. Nov. 16, 2004) (claim against the individual in his official capacity is redundant because plaintiff also names the local government unit as a defendant). In the instant case, Kellogg is the mayor of Harvey, which is also a defendant. Thus, the court grants Kellogg's motion to dismiss the official capacity claims against him.

## CONCLUSION

As explained above, the court grants defendants' motions to dismiss the Fifth Amendment claims, Count II and Counts IV through VI. Defendants' motions to dismiss the IIED claims, Counts VII through XI, are denied, but the court strikes plaintiffs' demand for punitive damages. Kellogg's motion to dismiss the official capacity claims against him is granted. Enyar's motion to dismiss Count III is denied.

Defendants are ordered to file their answers to Count I, Count III, and Counts VII through XII on or before December 9, 2005. The parties are directed to confer and file a joint, definitive discovery plan on or before December 14, 2005. The matter is set for a status hearing on December 20, 2005, at 9:00 a.m.

ENTER: November 17, 2005

_____
Robert W. Gettleman
United States District Judge